[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff (wife) and the defendant (husband) were married on August 9, 1970 in Glyfada, Greece. Both parties have resided in the State of Connecticut for more than one year prior to the wife filing the complaint on June 23, 1998. The plaintiff alleged the marriage has broken down irretrievably without any reasonable hope of reconciliation. There are two adult children from this marriage, a son John, age twenty-five, and a daughter Christine, age twenty. Neither of these parties were recipients of public assistance. The CT Page 5309 court has personal jurisdiction of these parties, and they proceeded to trial on April 10 and April 11, at which time both of them testified and were represented by counsel.
The wife testified the husband was the cause of the marital breakdown in that he assaulted her on numerous occasions throughout the marriage, she grew frightened of him, and he would not stop his extramarital affair with a Beverly Buckner. The husband denied all these accusations.
His son John testified that he never saw either party physically assault the other and his father is not a violent man. His father participated in the many of his school and sports activities while he was growing up, and he and was a good father. He heard them argue many times, however, these arguments never resulted in family violence. Neither of them ever applied for a restraining order against the other, and his father was never arrested for any family violence.
The husband testified the marriage was over sometime in 1994, and their differences were irreconcilable. On numerous occasions, they attempted to reconcile, but their efforts were unsuccessful. The wife left the marital residence and moved to the Chicago area in June, 1998. The husband testified he did not want his marriage to be terminated.
The court finds that each party must accept some of the responsibility for the breakdown of this marriage and finds both of them were partially at fault. Based on all the testimony, the court enters a decree of dissolution on the ground of irretrievable breakdown pursuant to § 46b-40 (c)(1) of the Connecticut General Statutes.
To understand the orders that will follow, it may be helpful to recite some of the background facts. The husband graduated from Michigan State University with a degree in mechanical engineering. The wife worked to help him during those college years. The wife was not able to attend college, but she developed excellent business skills and now holds a responsible full-time position as a senior account executive with First Health for over twelve years. His engineering degree opened up many employment opportunities for him with various companies. He has been employed for the past six years as a quality assurance representative with Bowater, Inc. His present gross annual salary including his bonus is about $102,000. Her present gross annual salary with First Health, including her bonus, is about $63,000. Both are fifty years old and have been supporting themselves since their separation over eighteen months ago. She claims to have incurred substantial credit card debt during the separation. They are in general good health and intend to continue CT Page 5310 working until retirement.
These parties have lived in several places before moving to the marital home at 2 Golden Pond Road in Newtown, which is jointly owned. On both of their current financial affidavits, they list the value of the marital home at $500,000 which was appraised for that amount (See Plaintiff's Exhibit 2.) They were able to make the down payment for this purchase from the equity they received from the sale of other homes they previously owned. There is a mortgage of about $332,956 listed on his financial affidavit, and he computes his one-half equity in the house at $83,522. The wife has purchased a condominium in Wheaton, Illinois, after she moved there. She has it listed on her financial affidavit to be worth $112,100, and minus the $84,000 mortgage, leaves a net equity of $28,100. The court believed her testimony that the down payment came from a $10,000 gift from her mother, $11,600 she received as a relocation benefit from her employer, and the balance from her own funds.
There is a dispute on the credit card and other debts listed on their respective affidavits. His total debt is $77,221, and claims the first five credit cards and the Optima card are joint marital debts (he has an asterisk next to them) totaling $55,658, leaving a balance of $21,563 as his personal debts.
In her financial affidavit, she lists a total of $70,298.60 as joint marital debts. From her affidavit, the court finds she cosigned a $20,600 debt for her son John to buy an automobile. He is making the monthly payments of $491; therefore, the court does not consider this loan to be a joint marital debt, and therefore deducts this $20,600 debt from the $70,298.60, leaving the balance of $49,698.60 in joint marital debts. She claims these debts were incurred over the past eighteen months after she left the marital home and used her credit cards to furnish her condominium and for other living expenses. The husband has not paid any temporary alimony since she has been living in Wheaton, Illinois.
The court finds all his joint marital debts total $55,658, and her joint marital debts total $49,698.60, for a grand total of $105,536.60, as of this date. These debts are ordered paid from the proceeds of the sale or his purchase of the marital home.
His financial affidavit lists a total net weekly income at $1325, with a total weekly expense of $1322. Her affidavit lists net weekly income of $953, and with weekly expenses of about $2000, of which $984 is for monthly recurring debts, leaving a shortfall of $163 a week after these debts are paid from the sale of the marital home. CT Page 5311
It is undisputed that the parties will be married thirty years on August 9th. They are both fifty years of age and in good health, and able to work full-time. They have raised their two children who are now adults. The daughter Christina is a junior at Western Connecticut State University, and the husband has been paying about $18,000 a year for her college expenses, even though he has no legal obligation to pay them.
Based on the length of the marriage and the other criteria in §46b-81 of the Connecticut General Statutes, the court believes and finds that the marital assets should be divided equally, in that both parties worked hard over the past thirty years to acquire them. The court also believes the wife is entitled to a reasonable and equitable lifetime periodic alimony award pursuant to § 46b-82 of the Connecticut General Statutes, all of which are hereinafter set forth in the court orders.
The court has considered all the testimony, reviewed the exhibits, the current financial affidavits, all the criteria in §46b-81, the assignment of property statute § 46b-82, the alimony statute, and § 46b-62 for the payment of attorney's fees. It has also considered all the case law including Scherr v. Scherr, 183 Conn. 366
(1981) in arriving at the following orders:
 ORDERS MARITAL RESIDENCE
The husband shall be allowed to reside at the marital residence located at 2 Gold Pond Road in Newtown until May 1, 2001, to give him and his children time to relocate. He shall be liable to continue paying the mortgage, taxes and insurance during his occupancy or until the house is sold or he exercises his option to purchase it. It shall be listed for sale with a local realtor, agreed to by the parties, on or before May 1, 2001. The net proceeds from the sale shall be divided equally after payment of the mortgage, the joint marital debts totaling $105,536.60 as previously ordered, a broker's commission, and other customary closing costs.
The husband shall have the first option to purchase the wife's interest for $500,000, which is the price the parties agreed the property is worth, based on an appraisal for that amount. (See Plaintiff's Exhibit 2.) From that price, there shall be deducted the mortgage debt, the joint marital debts ($105,536.60), and the customary closing costs, including one-half of the broker's CT Page 5312 commission of 5 percent. This option shall be exercised on or before December 31, 2000.
The personal property in the marital home and in the condominium shall remain the property of each party-resident.
The court will maintain jurisdiction over the marital home until sold or purchased by the husband to resolve any dispute which may arise.
 CONDOMINIUM
The wife shall maintain title to the condominium exclusively and hold the husband harmless from any liability relative thereto.
 DEFERRED COMPENSATION PLAN AND RETIREMENT AND STOCK OPTIONS
All of the deferred compensation and pension plans listed in both of their financial affidavits (the husband lists the value of $262,000 under (G) and the wife lists the value at $58,064.87 under (G) of her affidavit, and her vested and unvested stock options of $23,099, shall all be divided equally between the parties. The attorney for the plaintiff shall prepare any necessary Qualified Domestic Relations Orders to effectuate these transfers.
 BANK ACCOUNTS
The husband shall retain his bank accounts with the Newtown Savings Bank valued at $8600. The wife shall retain her account with Mid-America.
 ALIMONY
The husband shall pay the wife periodic alimony of $1,000 a month. Alimony shall terminate upon the death of either party, the wife's remarriage, or her cohabitation with an unrelated male pursuant to §46b-86 (b) of the Connecticut General Statutes.
In the event the husband retires at age sixty-two or after, said retirement shall not be considered a voluntary reduction of his earnings, and he may seek a modification of alimony pursuant to §46b-86 (a) of the Connecticut General Statutes.
 LIFE INSURANCE
The husband shall designate the wife as beneficiary of his $135,000 policy with Equitable Insurance Company until his alimony CT Page 5313 obligation terminates, is modified, or suspended.
 AUTOMOBILES
Each party shall retain title to their respective automobiles in their possession.
 ATTORNEY'S FEES
Each party shall be responsible for their own legal fees.
____________________ Romeo G. Petroni, Judge Trial Referee